UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| BONNIE NEWMAN DAVIS, | |
| Plaintiff, | |
| v. | Civil Action No. 3:13–CV–239 |
| MICHAEL RAO, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court GRANTS Defendants' Motion.

I.    **FACTUAL AND PROCEDURAL BACKGROUND[1]**

In the fall of 2004, Plaintiff Bonnie Newman Davis ("Ms. Davis" or "Plaintiff") began her full-time employment with Virginia Commonwealth University ("VCU") as a visiting instructor in the School of Mass Communications. During that academic year, Plaintiff was invited to become a contract-renewable collateral associate professor beginning in the 2005-2006 academic year. A plan was developed whereby Plaintiff would be converted to a professional-track, tenure-eligible appointment during the 2007-2008 academic year. However, due to miscommunications, she was converted to a tenure-eligible appointment

---

[1] For the purposes of this Motion, the Court assumes all of Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to Plaintiff's. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see* Fed. R. Civ. P. 12(b)(6).

during the 2008-2009 academic year. In the 2010-2011 academic year, Plaintiff applied for tenure.

Under the VCU School of Mass Communications Promotion and Tenure Guidelines and the Promotion and Tenure Review Guidelines for the College of Humanities and Sciences (collectively "Promotion and Tenure Guidelines" or "Guidelines"), the University considers three primary criteria for tenure: teaching, scholarship, and service to the University. To be granted tenure at the rank of associate professor, the Guidelines require that a candidate be rated: (1) excellent in the area of either teaching or scholarship and at least a rating of very good in the other area; and (2) satisfactory or above in the area of service.

A candidate's application is first reviewed by a Peer Tenure Review Committee ("Peer Review Committee"). The application is next considered by the Director or Department Chair of the School of Mass Communications. Afterwards, the application is reviewed by the College of Humanities and Sciences Promotion and Tenure Review Committee ("Promotion and Tenure Review Committee"). Next, the application is reviewed by both the Dean of the College of Humanities and Sciences and the Provost—Vice President for Academic Affairs. Finally, a denial of tenure is appealable to the University Promotion and Tenure Review Committee ("Appeals Committee") and then to the University President.

During Plaintiff's application process she received conflicting reviews and recommendations. The Peer Review Committee unanimously rated Plaintiff as excellent in the area of scholarship and unanimously rated her as very good in the area of teaching. Regarding the area of service, one committee member rated Plaintiff as excellent and four

members rated her as very good. The Peer Review Committee unanimously recommended that Plaintiff be granted tenure and promoted. The application was then forwarded to Dr. L. Terry Oggel, the Interim Director of the School of Mass Communications, for review.

Dr. Oggel rated Plaintiff as excellent in the area of scholarship and very good in the area of service. However, Dr. Oggel rated Plaintiff as only satisfactory in the area of teaching. Dr. Oggel stated that the Peer Review Committee minimized and disregarded the low evaluations by VCU students in Plaintiff's classes. Further, he argued that low numerical marks, strongly critical written student comments, a third-year committee report, and director's annual reports indicated serious and recurring difficulties in the area of teaching. Based on this rating, Dr. Oggel recommended that Plaintiff be denied tenure. Plaintiff's actual annual teaching evaluations reveal that she was rated as satisfactory in two years but also rated as good or very good in four other years. A review of all the student evaluations reveals that, while some students rated Ms. Davis harshly, many others rated her as having been among the best teachers they had encountered at VCU. Dr. Oggel never took the opportunity to personally observe Plaintiff's classroom teaching nor did he include in his report that Plaintiff met 13 of 17 guidelines for teaching established by the Promotion and Tenure Guidelines.

Next, the Promotion and Tenure Review Committee reviewed Plaintiff's application, rating Plaintiff as satisfactory in the area of teaching and describing her teaching evaluations as mediocre at best. The Promotion and Tenure Review Committee's report gave great emphasis to the negative student evaluations with only passing reference to positive student evaluations. Plaintiff also received six votes of very good and one vote of excellent in the area of scholarship. The Promotion and Tenure Review Committee

unanimously voted against recommending Plaintiff's promotion to tenure. The Promotion and Tenure Review Committee's recommendation was then forwarded for administrative review.

Interim Dean of the College of Humanities, Fred M. Hawkridge, agreed with the findings and recommendations of the Promotion and Tenure Review Committee and also recommended against granting Plaintiff tenure. Following this recommendation, Plaintiff's application was forwarded to Beverly J. Warren, Interim Provost and Vice President for Academic Affairs for VCU. On reviewing the record, Dr. Warren concluded that the Director and the Promotion and Tenure Review Committee accurately assessed Plaintiff's teaching, scholarship, and service record and that there were no procedural or substantive reasons to overturn their recommendations against awarding tenure.

On May 12, 2011, Plaintiff appealed the denial of her tenure to the Appeals Committee. On June 21, 2011, the Appeals Committee, chaired by Dr. Cynthia J. Kirkwood, advised that the Committee did not find sufficient evidence of procedural or substantive errors to grant Plaintiff's appeal. The Committee then recommended a denial of Plaintiff's appeal and refused to grant a full hearing. Plaintiff then submitted a second appeal to the President of VCU, Michael Rao. President Rao subsequently did not respond—in violation of VCU tenure policies and procedures. After being denied tenure, Plaintiff secured employment as a faculty member at North Carolina A&T State University.

Plaintiff filed her Complaint on April 17, 2013. In Count I, Plaintiff alleges that Defendant L. Terry Oggel deprived her of due process, under color of state law, in violation of 42 U.S.C. § 1983, by arbitrarily rating Plaintiff as satisfactory in the area of teaching

4

without having observed Ms. Davis's teaching, and by refusing to accept the objective evaluations of the former director of the School of Mass Communications.

In Count II, Plaintiff alleges that Defendant Fred M. Hawkridge deprived her of due process, under color of state law, in violation of 42 U.S.C. § 1983, by refusing to accept the objective evaluations of the former director of the School of Mass Communications, arbitrarily rating Plaintiff as satisfactory in the area of teaching, and rating her scholarship as very good rather than excellent.

In Count III, Plaintiff alleges that Defendant Beverly J. Warren deprived her of due process, under color of state law, in violation of 42 U.S.C. § 1983, by arbitrarily refusing to properly consider Plaintiff's record of teaching, scholarship, and service, and also by failing to recommend her for tenure in light of positive evaluations from her former school director and peers.

In Count IV, Plaintiff alleges that Defendant Dr. Cynthia K. Kirkwood deprived her of due process, under color of state law, in violation of 42 U.S.C. § 1983, by arbitrarily refusing to properly consider Plaintiff's record of teaching, scholarship, and service, and also by failing to recommend her for tenure in light of positive evaluations from her former school director and peers.

In Count V, Plaintiff alleges that Defendant Michael Rao deprived her of due process, under color of state law, in violation of 42 U.S.C. § 1983, by failing or refusing to respond to her appeal.

For all Counts, Plaintiff seeks an order requiring Defendants to reinstate her to the VCU faculty with tenure. Further, Plaintiff seeks an award of compensatory damages in the amount of one million dollars ($1,000,000.00) for (a) loss of past and future earnings; (b)

loss of personal and professional esteem; (c) humiliation, pain and suffering, and emotional distress; (d) punitive damages; (e) attorneys' fees under 42 U.S.C. § 1988; and (f) costs of suit.

Defendants filed their Motion to Dismiss on July 2, 2013. Plaintiff's Opposition was filed on August 6, 2013. Defendants' Reply was filed on August 6, 2013.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must therefore accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The Court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Id.* at 545; *see id.* at 555 n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.  DISCUSSION

### A.  Parties' Arguments

Defendants argue that Plaintiff lacks a protected property interest because she had no reasonable expectation of permanent or continuing employment as evidenced by the fact that her appointments were for a single year and she was "tenure eligible" and not "tenure assured." (Defs.' Mem. Supp. Mot. Dismiss 9). They further aver that "[t]he fact that VCU has written policy to guide the discretion of tenure reviewers does not constitutionalize her state employment status." (Defs.' Mem. Supp. Mot. Dismiss 10). Defendants contend that they afforded Plaintiff with review consistent with due process and pursuant to the Promotion and Tenure Guidelines.

First, Plaintiff asserts that she has a protected property interest because the Promotion and Tenure Guidelines fostered a mutual understanding that Plaintiff would be entitled to an impartial, merit-based inquiry at her tenure review. Second, Plaintiff avers that the denial of her tenure implicated her liberty rights because it placed a stigma on her that follows her throughout her career.[2] Third, Plaintiff asserts she was not afforded due process because Defendant Oggel made a final decision that was arbitrary and capricious by ignoring the Promotion and Tenure Guidelines, objective measures of teaching

---

[2] Plaintiff first proffered this argument in her Opposition to Defendants' Motion to Dismiss. She did not include this argument in her initial Complaint.

performance reviews, and selecting only the worst student evaluations as the basis for reducing Plaintiff's rating as a teacher.

Defendants rebut that neither eligibility for tenure nor detailed university procedures, without more, created a property interest. Defendants aver that, even if Plaintiff had a protected property interest, due process was afforded to Plaintiff because due process does not require an elevation of one set of scoring or evaluations over another. They also argue that Plaintiff has not made the case that Defendant Oggel made a purely subjective decision or that subjectivity does not have a proper role to play in tenure decisions.

Defendants argue that Plaintiff had no liberty interest at stake because the denial of tenure did not constitute any stigma, the process was not made public, and there was no falsity involved in the tenure denial process. They further assert that Plaintiff was not harmed by any words or phrases used in the tenure process as evidenced by her ability to continue her career at North Carolina A&T State University.

## IV.    ANALYSIS

### A.  Due Process

The first question in any procedural due process analysis is whether the plaintiff has been deprived of a liberty or property interest protected by the Fourteenth Amendment because the requirements of procedural due process only apply when such protected interests are implicated. *Nofsinger v. Va. Commonwealth Univ.*, 3:12-CV-236, 2012 WL 2878608, at *6 (E.D. Va. July 13, 2012), *aff'd*, 12-1961, 2013 WL 1305672 (4th Cir. Apr. 2, 2013). In order to state a section 1983 claim for deprivation of property without due process, a plaintiff must show that she has a constitutionally protected property interest,

8

and that she has been deprived of that interest by state action. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. To possess a property interest, a claimant "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577; *see also Echtenkamp v. Loudon Cnty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1053 (E.D. Va. 2003). Once these elements are established, the question turns to what process is due and whether it has been provided. *See Stone*, 855 F.2d at 172.

i. <u>Protectable Property Interest</u>

In *Siu v. Johnson*, 748 F.2d 238 (4th Cir. 1984), the Fourth Circuit rejected a plaintiff's claim that she had either a property interest in "reemployment itself" or a "property interest in the [tenure application] procedures" as "conceptually unacceptable" because it would result in circular logic:

> Put this way the claim is a circular one: the state's detailed procedures provide the due process guarantees which create the very property interest protected by those guarantees. . . . Its logical effect would be to 'constitutionalize' all state contractual provisions respecting the continuation of public employment.

*Id.* at 244 n.11. In dicta, the court held that a property interest in a tenured position might not exist absent university procedures whose application over time give rise to an institutional "common law of re-employment" under which the interest created by probationary employment can be elevated to something "firmer than a mere 'unilateral

expectation.'"[3] *Id.* at 243-44. The *Siu* court did not, however, rest its holding on this language but rather assumed, for the sake of argument, that the defendant university's contractual procedures created a protectable interest. *Id.* at 244.

The Fourth Circuit has, however, indicated that at-will employees have no protectable property interest in procedure itself. In *Lehman v. Sturza*, an at-will employee plaintiff sued state and individual defendants alleging that he was fired from his job in derogation of his procedural due process rights. No. 93-2133, 1994 WL 329489, at *2 (4th Cir. 1994) (unpublished opinion). Specifically, the plaintiff alleged that the defendants fired him without following different and more extensive procedures than the ones used. *Id.* The court first held that under North Carolina state law, an at-will employee had no legitimate claim of entitlement to continued employment and thus no property interests for the purposes of the Fourteenth Amendment. *Id.* at *3. The court went on to reject the plaintiff's contention that procedures and other procedural guarantees, with the force of state law, established a legitimate claim of entitlement to continued employment: "It is by now well established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance." *Lehman*, 1994 WL 329489, at *2-3 (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989), *cert. denied,* 493 U.S. 992

---

[3] The court noted that:

> some courts have treated the probationary tenure track appointment as if it were indeed no more than employment at-will, and have held that it does not therefore give rise to a protectible property interest beyond its stated term. On the other hand, some courts have intimated . . . that the 'expectancy' of tenure might be elevated to constitutionally protectible property interest status by contractually binding provisions which, in some form or another, require a regularized decisional process for declining to award tenure.

*Siu*, 748 F.2d at 243 (internal citations omitted).

(1989)); *see also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (liberty interest); *Jenkins v. Weatherholtz*, 909 F.2d 105, 108 (4th Cir. 1990); *Bennett v. Boston*, 869 F.2d 19, 22 (1st Cir. 1989); *Stow v. Cochran*, 819 F.2d 864, 867 (8th Cir. 1987); *cf. Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) (liberty interest). The court further stated that

> Process is not an end in itself. . . . Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Lehman*, 1994 WL 329489, at *3 (citing *Olim*, 461 U.S. at 250-51); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 614 (E.D. Va. 2004) (citing *Olim*, 461 U.S. at 250-51 for the same proposition); *Amr v. Va. State Univ.*, 3:07-CV-628, 2009 WL 112829, at *8 n.15 (E.D. Va. Jan. 14, 2009), *aff'd,* 331 F. App'x 194 (4th Cir. 2009) ("Even if Dr. Amr were unambiguously asserting a property interest in his employment at VSU, an untenured professor such as Dr. Amr has no constitutionally protected property interest in continued employment.").

In addition, other Circuits have held that "establishment of a formal tenure process generally 'precludes a reasonable expectation of continued employment' for non-tenured faculty." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992) (citing *Edinger v. Bd. of Regents of Morehead State Univ.*, 906 F.2d 1136, 1140 (6th Cir. 1990)); *accord Lovelace v. Se. Mass. Univ.*, 793 F.2d 419, 423 (1st Cir. 1986); *Eichman v. Ind. State Univ. Bd. of Trs.*, 597 F.2d 1104, 1109 (7th Cir. 1979); *see also Dube v. The State Univ. of New York*, 900 F.2d 587 (2d Cir. 1990), *cert. denied,* 501 U.S. 1211 (1991); *Goodisman v. Lytle*, 724 F.2d 818 (9th Cir. 1984); *Beitzell v. Jeffrey*, 643 F.2d 870 (1st Cir. 1981).

Lastly, Virginia law also indicates that at-will employees lack protected property interests and are not entitled to due process. In *County of Giles v. Wines*, an at-will employee sued a defendant under section 1983 arguing that the defendant's personnel policy regarding discharges created an employment contract. 546 S.E.2d 721, 722 (Va. 2001). The policy stated, in part:

> An employee may be discharged for inefficiency, insubordination, misconduct, or other just cause. Discharge may be made by the Department Head with approval of the County Administrator in the case of employees below department head level. The County Administrator with the approval of the Board of Supervisors may discharge other employees. A written statement of the reasons for such action shall be furnished the employee and a copy shall be made part of the personnel file of the individual.

*Id.* The defendant argued that the policy did not constitute an employment contract whereby the plaintiff would be terminable solely for cause. *Id.* at 724. The Virginia Supreme Court held that the plaintiff, as an at-will employee, had "no property right which is protected by the federal constitution and, hence, his claims under 42 U.S.C. § 1983 were not legally cognizable." *Id.* at 725. The court based its holding on the strong presumption in Virginia law that employment relationships are at-will. *Id.* at 723. While not dispositive, state law may be influential. *See., e.g.*, *Spuler*, 958 F.2d at 107 (referring to Texas law in holding that at-will employees have no protectable interests under section 1983).

Plaintiff does not affirmatively assert that her status as a tenure-eligible professor created a protectable property interest. Instead, she asserts that she had a protectable interest in a fair and merit-based tenure review process. However, her claim fails in light the holdings of *Olim*, *Lehman*, and the dicta in *Siu*. There is no indication that VCU's Promotion and Tenure Guidelines created an employment contract whereby Plaintiff would be terminable solely for cause. Further, there is no indication that the Guidelines

12

created a "common law of reemployment" contemplated in *Siu*. As in *Lehman*, Plaintiff may not rely on the procedural "guarantees" of VCU's guidelines in order to demonstrate a property interest worthy of protection under the Due Process Clause of the Fourteenth Amendment.

As such, the Court holds that Plaintiff has no protectable property interest in her status as an untenured professor or in VCU's Promotion and Tenure Guidelines.

i.   What Process was Plaintiff Due?

Assuming for the sake of argument that Plaintiff had a protectable property interest, the next step would be to determine what process was due. It is well established that due process typically requires that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). More specifically, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*; *see also Echtenkamp*, 263 F. Supp. 2d at 1054.

Regarding the process due untenured employees, in *Siu* the Fourth Circuit rejected the proposition that the process due cannot be less than that defined in detail by institutional procedures. *See Siu*, 748 F.2d at 244. Instead they held that, "where a property interest—including one involving academic employment—is claimed to be derived from state law sources, . . . it is obviously necessary to look to those sources to determine the general nature of the interest, for the process constitutionally due is dependent upon that." *Id.* (citations omitted). Further, the court held that while state law sources are important for context, "they do not define in detail the process constitutionally due for protection of

13

the interest, except to the extent that they may coincide with elements of that process as independently defined by federal law." *Id.* The *Siu* court went on to hold that the procedures proscribed for making the tenure decision at issue "plainly contemplate a subjective, evaluative decisional process by academic professionals rather than an objective fact-finding process by tribunals adapted to that quite different purpose." *Id.* Accordingly, the decision-makers at issue need only make a final decision in "a way not so manifestly arbitrary and capricious that a reviewing court could confidently say of it that it did not in the end involve the exercise of professional judgment." *Id.* at 245. "The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing upon the appropriateness of conferring academic tenure." *Id.*; *see also Betts v. Rector & Visitors of Univ. Of Va.*, No. 97-1850, 1999 WL 739415, at *8 (4th Cir. 1999) (unpublished opinion) ("[H]ere, the challenged action involves a subjective inquiry, the standard for evaluating whether there has been a denial of procedural due process is substantially relaxed.").

In *Siu*, a tenure-eligible plaintiff was denied tenure after being considered pursuant to university policy. 748 F.2d at 239. Under established university policy, candidates were to be evaluated in accordance with substantive standards embodied in the university's Faculty Handbook. *Id.* Candidates were assessed on their teaching performance, research and scholarship ability, and service to the university. *Id.* at 240. Under the Faculty Handbook guidelines, a candidate was assessed in a multi-step process including review by: (1) faculty of his or her department; (2) an advisory committee on promotions and tenure, after which any member of the academic community could submit comments; (3) the collegial dean and the Vice President for Academic Affairs, who reviewed the committee

recommendations and other materials and then made a recommendation to the President; and (4) the President, who then rendered a decision regarding his support or non-support of the candidate's nomination. *Id.* The plaintiff received favorable recommendations from her department and the advisory committee. *Id.* However, at higher administrative levels, her candidacy met opposition based on her "lack of strong and consistent scholarship." *Id.* A defendant dean denied her application after reviewing an abbreviated confidential file and not the entire dossier compiled during departmental reviews. *Id.* at 240-41. Next, the President advised the plaintiff that he could not support her candidacy after reviewing the various deans' recommendations and considering the general qualifications of that year's candidates. *Id.* The President, however, did not base his recommendation on her full dossier. *Id.* Finally, at the behest of the President of the University, the Vice President for Academic Affairs recommended against the plaintiff's tenure after reviewing the plaintiff's departmental record. *Id.* The *Siu* court held that "the tenure decision was made by defendants on the basis of factors clearly relevant to legitimate institutional interests in awarding tenure." *Id.* at 246. Further, the court held that "it [was] obvious that the decision was rested directly on the perceived, relative lack of scholarly potential, a factor central to a responsible decision respecting tenure conferral." *Id.*

In a later case, *Wells v. Virginia Commonwealth University*, a plaintiff nominated herself for promotion to full professor from a position of assistant professor. No. 86-1561, 1987 WL 37012, at *1 (4th Cir. 1987) (unpublished opinion). In support of her nomination, she submitted certain documents reflecting her scholarship including published articles, papers, and other written works. *Id.* After reviewing the plaintiff's promotion file, the school committee voted to recommend her promotion by a vote of five to two. *Id.* The

plaintiff's application was then forwarded to a dean who noted that her published work was limited but that her commitment to scholarly activity was evident. *Id.* These recommendations, along with the plaintiff's statement of self-evaluation and curriculum vitae, were then forwarded to a Provost and Vice-President for Academic Affairs. *Id.* The other documents submitted by the plaintiff were not forwarded, but it was noted that they were available upon request. *Id.* After reviewing some of the materials, but not the written works submitted by the plaintiff, the Provost recommended against awarding tenure because of her lack of scholarly activity. *Id.* Subsequently, a university committee also voted against recommending the plaintiff for promotion based on the plaintiff's lack of scholarly activity. The plaintiff alleged that university officials violated her due process rights by denying her tenure while failing to review all of the materials in her promotion file. *Id.* at *2. The Fourth Circuit suggested that "reckless inattention to relevant materials" might arguably make a decision arbitrary and capricious. *Id.* at *3 (citing *Siu*, 748 F.2d at 246). However, they distinguished this suggestion by holding that "the failure of some of the persons involved in the review process to read all of the materials submitted does not of itself demonstrate that the decision-making process was arbitrary and capricious." *Id.* at *3.

Under *Siu* and *Wells*, assuming arguendo that Plaintiff has a property interest, she was afforded due process by Defendants. The holding in *Siu* contradicts Plaintiff's effective argument that she was due no less than the policies included in VCU's Promotion and Tenure Guidelines. Instead, Plaintiff must show that Defendant Oggel and the subsequent Defendants failed to base their decisions on factors that clearly bore on the appropriateness of conferring academic tenure. Plaintiff does not allege a procedural argument that Dr. Oggel failed to review all of the relevant materials in making his

16

recommendation against tenure. She instead alleges a substantive argument that Defendant Oggel gave an improper amount of weight to the negative aspects of her application and that his assessment was not reasonable or fair under the Guidelines.[4] However, under *Siu*, so long as Defendant Oggel made his decision with appropriate factors in mind, Plaintiff was afforded the process due to her. Under *Wells*, the fact that Dr. Oggel never took the opportunity to personally observe Plaintiff in the classroom or include in his report the fact that Plaintiff met most of the relevant guidelines is not dispositive.[5] Much like in *Siu*, Defendant Oggel seemed to base his negative recommendation primarily on Plaintiff's teaching ability, which is clearly a relevant and legitimate institutional interest where tenure is being awarded. Plaintiff cannot show that Defendant Oggel's recommendation was arbitrary and capricious.

Regarding the other Defendants, Plaintiff does not provide a comprehensive list of the materials they reviewed when making their recommendations. She states that the Promotion and Tenure Review Committee reviewed at least some student evaluations. She does not provide any information about the materials viewed by Defendants Hawkridge, Warren, and Kirkwood. Ms. Davis, however, does mention that Defendants reviewed a "file." VCU's Promotion and Tenure Guidelines state that each of the defendants shall receive a "file" and review it in accordance with the Guidelines. (ECF No. 4 Ex. 3, p. 25-32). The "file" is something that the Peer Review Committee creates after conducting a

---

[4] "[I]t is precisely Ms. Davis's argument that by ignoring more objective measures of teaching performance and substituting the judgment of a handful of students who found Ms. Davis's teaching to be 'mediocre at best,' the denial of tenure was manifestly arbitrary and capricious." (Pl.'s Mem. Opp. Defs.' Mot. Dismiss 4).

[5] Plaintiff does not state that Defendant Oggel based his decision on anything other than the Peer Review Committee's recommendation. However, as discussed in the next paragraph, the Committee's recommendation likely included a file containing more.

substantive evaluation of a candidate's record and performance, including all accumulated student evaluations, individualized work plans, prior reviews, written internal and external evaluations, and solicited letters. (ECF No. 4 Ex. 3, p. 24-25). After making a recommendation, the Peer Review Committee's recommendation is added to the "file." (ECF No. 4 Ex. 3, p. 25). Accordingly, although not specifically referenced by Plaintiff, it stands to reason that each Defendant had access to a least the "file" assembled by the Peer Review Committee. Plaintiff indicates as much when she referenced a letter she received from Defendant Warren advising that her review of the file led her to conclude that the the Interim Director and the Promotion and Tenure Review Committee had accurately assessed her teaching, scholarship, and service record. (Compl. ¶ 41). Additionally, while Defendant Rao may have failed to notify Plaintiff of his decision regarding her application, the Court finds that Plaintiff was afforded the process due to her because, despite Defendant Rao's de facto denial, Plaintiff's tenure application was reviewed by multiple people at several steps throughout the relevant application process. In sum, even assuming that Plaintiff has a protectable interest, the Court holds that Plaintiff was afforded due process.

      B.  <u>Plaintiff's Liberty Interest</u>

Employees have a constitutionally protected liberty interest in their "good name, reputation, honor, or integrity," and that this liberty interest "is implicated by public announcement of reasons for an employee's discharge." *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990); *see also Roth*, 408 U.S. at 573. A person is not deprived of "liberty" simply because they are not rehired in one job but remain free as before to seek another. *Roth*, 408 U.S. at 575. In order to state a claim for violation of the liberty interest, Plaintiff

must allege facts sufficient to show that: (1) her superiors made charges against her that imposed a stigma on her reputation, (2) such charges were made public by the employer, (3) the charges were made in conjunction with her termination or demotion, and (4) the stigmatizing remarks were false. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007) (citing *Stone*, 855 F.2d at 172 n.5).

In *Sciolino*, a former, probationary city police officer brought a similar action pursuant to 42 U.S.C. § 1983. 480 F.3d at 644-45. He asserted that, when discharging him, the city placed in his personnel file false information damaging to his good name without granting him a name-clearing hearing, and so deprived him of liberty rights without due process of law. *Id.* at 645. The district court dismissed the plaintiff's complaint because the former employee did not allege facts asserting a likelihood that prospective employers or members of the public would see the damaging information. *Id.* On appeal, the Fourth Circuit held that a plaintiff must allege more than the "mere presence" of stigmatizing charges that "may be available" to prospective employers. *Id.* at 649. Instead, a plaintiff must allege that their termination is "based on false, stigmatizing charges that are likely to be inspected by prospective employers."[6] *Id.*

In *Echtenkamp*, a plaintiff alleged that her liberty interests in her good name and reputation were violated when she was placed on probationary status, threatened with dismissal without due process of law, and was defamed by her supervisors and co-workers.

---

[6] A plaintiff can meet this standard in two ways. First, the employee could allege (and ultimately prove) that his former employer has a practice of releasing personnel files to all inquiring employers. Second, the employee could allege that although his former employer releases personnel files only to certain inquiring employers, he intends to apply to at least one of these employers. In either case, he must allege that the prospective employer is likely to request the file from his former employer. *Sciolino*, 480 F.3d at 650.

263 F. Supp. 2d at 1049. The court dismissed her claim because the plaintiff failed to allege facts sufficient to show either publication of the statements or that they were made in the context of a discharge or significant demotion. *Id.* at 1057.

In this matter, Plaintiff has failed to allege facts sufficient to show a violation of her liberty interests. It is clear that under *Roth*, Plaintiff may not assert a deprivation of "liberty" simply because she was fired. *See Roth*, 408 U.S. at 575. Even assuming that some stigmatization has taken place, Plaintiff must assert more. Under *Sciolino* and *Echtenkamp*, Plaintiff must also allege that the charges (or basis of her tenure denial) were made public by VCU or are likely to be inspected by prospective employers, and that they were false. Plaintiff has failed to do so in her Complaint and in her Opposition to Defendants' Motion to Dismiss. As such, this Court holds that Plaintiff has failed to support her claim of a violation of her liberty interests.[7]

## V.       CONCLUSION

For the above reasons, the Court GRANTS Defendants' Motion to Dismiss on all Counts. Plaintiff's Complaint is hereby DISMISSED.

In the conclusion section of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff requested leave to amend her Complaint in the event that Defendants' Motion to Dismiss is granted. "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th

---

[7] Because Plaintiff has not supported her claims that Defendants violated either her property or liberty rights under the Fourteenth Amendment, the Court declines to reach the issue of qualified immunity.

Cir. 2006)). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Here, Plaintiff did not propose any amendment to the Court. Nonetheless, regarding Plaintiff's alleged property interest, any amendment would be futile because Plaintiff has no protectable property interest at stake. Regarding Plaintiff's alleged liberty interest, no relief could be granted under any set of facts that could be proved consistent with the allegations in this matter because none of the statements or charges by Defendants were objectively false. *See Hishon*, 467 U.S. at 73; *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999). Accordingly, the Court DENIES Plaintiff's request for leave to amend her Complaint.

       An appropriate Final Order will accompany this Memorandum Opinion.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___12th____ day of November 2013.